1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney
2
   KATHERINE L. WAWRZYNIAK (CABN 252751)
3  Chief, Criminal Division

4  CLAUDIA QUIROZ (CABN 254419)
   KATHERINE LLOYD-LOVETT (CABN 276256)
5  Assistant United States Attorneys
   C. ALDEN PELKER (MD)
6  Trial Attorney
   Computer Crime & Intellectual Property Section
7  United States Department of Justice

8
         450 Golden Gate Avenue, Box 36055
9        San Francisco, California 94102-3495
         Telephone: (415) 436-7428
10       FAX: (415) 436-7234
         claudia.quiroz@usdoj.gov
11       katherine.lloyd-lovett@usdoj.gov
         catherine.pelker@usdoj.gov
12
13 Attorneys for United States of America

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                      SAN FRANCISCO DIVISION

17

18 UNITED STATES OF AMERICA,              )  CASE NO. CR 16-00227 SI
                                          )
19         Plaintiff,                     )  **UNITED STATES' OPPOSITION TO**
                                          )  **DEFENDANT ALEXANDER VINNIK'S**
20     v.                                 )  **MOTION TO AMEND PROTECTIVE ORDER**
                                          )
21 ALEXANDER VINNIK,                      )
                                          )
22         Defendant.                     )
                                          )
23 _____   )

24

25

26

27

28

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI
                                    I

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................................................1

**FACTUAL SUMMARY AND PROCEDURAL HISTORY**.................................................2

    A.  Factual Background ..............................................................................................2

    B.  Relevant Procedural History ...............................................................................3

**ARGUMENT** ....................................................................................................................4

    A.  Protective Order Terms Are Necessary to Protect Discovery Materials .........................4

    B.  Vinnik's Characterization of the Protective Order's Restrictions Is Exaggerated and
    Misleading..............................................................................................................7

    C.  There is Good Cause for the Existing Terms of the Protective Order ...........................9

    D.  Advocating for a Prisoner Swap Is Not Part of the "Defense of This Case" Within the
    Meaning of the Protective Order...........................................................................10

    E.  The Public Does Not Have a Right to Access to the Discovery Materials................................111

    F.  Vinnik Has No Standing to Bring First Amendment or Right to Access Claims.........................13

**CONCLUSION** .............................................................................................................14

1

## TABLE OF AUTHORITIES

2

### Federal Cases

3   *Accord Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1316 (11th Cir. 2001) ...... 8

4   *Alderman v. United States*, 394 U.S. 165 (1969) ................................................................... 5

5   *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d at 1137-38................................................... 6

6   *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978) ......................................................... 11

7   *IMS Health, Inc. v. Ayotte*, 550 F.3d 42 (1st Cir. 2008) .................................................. 13

8   *In re Terrorist Attacks on September 11*, 454 F. Supp. 2d 220 (S.D.N.Y. 2006) .................................... 5

9   *L.A. Police Dep't v. United Reported Publ'g Co.*, 528 U.S. 32, 40, (1999) ............................................ 11

10   *Powers v. Ohio*, 499 U.S. 400 (1991) ........................................................ 13

11   *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 36 (1984) .................................................. 11

12   *Singleton v. Wulff*, 428 U.S. 106 (1976) ...................................................... 13, 14

13   *United States v. Amodeo,* 44 F.3d 141, 145 (2d Cir. 1995) .................................................. 12

14   *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) ....................................... 8, 11

15   *United States v. Blagojevich*, 612 F.3d 558, 562 (7th Cir. 2010) ............................................ 11

16   *United States v. Carpenter, No. 2:14-cr-309-GEB*, 2018 U.S. Dist. (E.D.Cal. Aug. 6, 2018) ............... 12

17   *United States v. Fraijo, No. CR-20-00248-001-TUC-JCH*, 2022 WL 1018385(D. Az. Apr. 5, 2022) ..... 5

18   *United States v. Hickey*, 185 F.3d 1064 (9th Cir. 1999) ...................................................... 13

19   *United States v. John Francis Porter*, 3:22-cr-00270-WHO, Dkt. No. 58 .................................... 8

20   *United States v. Loughner*, 807 F. Supp. 2d 828, 834 (D. Ariz. 2011) .................................... 11

21   *United States v. Karlsson*, 3:19-cr-340-CRB, Dkt. No. 37................................................... 7

22   *United States v. Kimberly Dominguez and Erick Dominguez*, 19-cr-591-HSG, Dkt. 13 ......................... 8

23   *United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013) ...................................................... 8, 11

24   *United States v. Manish Lachwani*, 3:21-cr-00353-CRB, Dkt. 27 ........................................... 8

25   *United States v. Nashatka and Gunton*, 3:19-cr-00372-EMC, Dkt. No. 6 ................................... 8

26   *United States v. Ryan Mark Ginster*, 3:19-cr-340-CRB, Dkt. No. 37 ....................................... 7

27   *United States v. Thomas Henderson et al.*, No. 19-cr-00376-RS .............................................. 8

28

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI

III

**Federal Rules**

Fed. R. Civ. P. 26 ............................................................................................................. 11

Fed. R. Crim. Proc. 16 ...................................................................................... 2, 3, 4, 5

Fed. R. Evid. 16 ................................................................................................................ 11

1

**INTRODUCTION**

2          On September 26, 2022, this Court entered a Protective Order governing the discovery in this

3   case.  That Protective Order was tailored to ensure the defense had the ability to use the discovery

4   material as needed, but included the common requirement that the use of the discovery material relate to

5   the defense of the criminal case.  Pursuant to that Protective Order, the government has produced

6   voluminous discovery, including significant financial records, images of electronic devices, contents of

7   numerous email accounts, and other communications and information pertaining to Defendant

8   Alexander Vinnik as well as uncharged third-parties, potential witnesses, and co-conspirators.  Vinnik

9   now seeks a nullification of the Protective Order entered by this Court, arguing that he should be

10  permitted to share the discovery and discuss the case with "anyone who is willing to listen," including

11  the "the news media, and the public itself."  Dkt. No. 59 at 11.

12         In support of his motion, Vinnik makes a series of inaccurate and misleading arguments about

13  the Protective Order's scope and presents an imprecise interpretation of existing case law on the public

14  right of access doctrine as it pertains to this case.  Vinnik also makes several factual assertions

15  throughout his motion that are simply not correct and which, along with the legal inaccuracies set forth

16  therein, should be rejected by the Court.[1]

17         First, Vinnik incorrectly characterizes the Protective Order as an aberration.  The Protective

18  Order in this case was tailored to the specific circumstances of this complex matter, yet largely parallels

19  language used in prior protective orders in this district and others.

20         Second, Vinnik wrongly argues that a common restriction on using discovery information for

21  purposes unrelated to the defense of the criminal case is somehow the equivalent of a gag order that

22  serves no practicable or justifiable purpose.  In truth, nothing about the Protective Order prevents Vinnik

23  from speaking with his family or seeking religious counseling from his priest.  Similarly, nothing in the

24  Protective Order prevents defense counsel from advocating for a prisoner swap for his client—which he

25  has done from the outset.  Indeed, at Vinnik's request, the Court already modified the Protective Order

26

27         [1] Vinnik also makes a series of misstatements about the government's activities and the state of
    the French proceedings.  The government disputes those characterizations, which are entirely irrelevant
28  to the instant dispute.

    U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
    CR 16-00227 SI

1   to allow him to provide materials directly to the United States Department of State so that he could

2   advocate for such a prisoner swap.  Vinnik's proposed amendment to the Protective Order would

3   dispense with all the protections afforded to the discovery material in this case, and which various

4   judges in this district have repeatedly approved.

5          Third, Vinnik erroneously claims that there is a constitutional and common law right of public

6   access to the discovery produced by the government in this case.  However, the United States Supreme

7   Court has long held that there is no common law or First Amendment public right of access to discovery

8   information.

9          Fourth, Vinnik asserts that the existing Protective Order places no restrictions on his ability to

10  file any discovery material that is not designated as sensitive in the public docket—an interesting

11  proclamation, given his diametrically opposed argument that he is "gagged" by the Protective Order.  He

12  then claims that once filed, qualified common law and constitutional rights of access attach to the

13  discovery materials.  This manufactured line of reasoning necessarily fails.  Documents collected during

14  discovery are not judicial records, and merely filing a paper or document with the court is insufficient to

15  render that paper a judicial document subject to the common law right of public access.  In any event,

16  Vinnik has no standing to bring such right to access claims because he is not a member of the public

17  whose only interest in the litigation is access to court documents.

18         In sum, Vinnik's motion has no merit.  There was, and there remains, good cause for the

19  Protective Order.  *See* Fed. R. Crim. Proc. 16(d)(1).  Vinnik's exaggerated claims about the restrictive

20  nature of the Protective Order lack grounding in existing case law.  The Court should deny the motion.

21                          **FACTUAL SUMMARY AND PROCEDURAL HISTORY**

22         **A.      Factual Background**

23         Alexander Vinnik is pending trial in this district for charges relating to his operation of BTC-e, a

24  muti-billion-dollar money laundering platform, which Vinnik and his co-conspirators designed to

25  intentionally promote and facilitate cybercrimes on a massive scale.  As the "go to" virtual currency

26  exchange for cybercriminals, Vinnik and his co-conspirators used BTC-e to launder billions in criminal

27  proceeds from purveyors of ransomware, dark-web child-pornography sites, and narcotics marketplaces

28

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI

1   such as Silk Road and Alpha Bay, as well as the proceeds of human trafficking, and hundreds of

2   millions of dollars stolen from U.S. victims.  The Superseding Indictment generally alleges that Vinnik

3   is a sophisticated money launderer and cybercriminal who, prior to his arrest, operated an intricate

4   network of shell companies.  He intentionally placed assets in jurisdictions where it would be difficult

5   for Western countries to restrain them and moved hundreds of millions of dollars through these

6   accounts.  In addition, Vinnik mastered the use of aliases, assuming the identity of several individuals

7   and presenting himself as them.  This helped him to operate BTC-e for years with impunity.[2]

8          **B.      Relevant Procedural History**

9          On September 26, 2022, the Court entered a Protective Order for the discovery in this case

10  following a series of negotiations and discussions between the parties to ensure that sufficient

11  protections were in place given the complexity of the case and the sensitive nature of the discovery

12  materials.  *See* Dkt. No. 29.  Paragraph two of the Protective Order states the following: "All materials

13  provided by the United States in preparation for, or in connection with, any stage of this case

14  (collectively, 'the materials') may be used by the defendant and defense counsel *solely in connection*

15  *with the defense of this case, and for no other purpose, and in connection with no other proceeding*,

16  without further order of this Court."  *Id.* ¶ 2 (emphasis added).  Paragraph three further provides in

17  relevant part as follows:

18           Neither the defendant nor any member of the Defense Team shall provide any
             discovery material produced by the government—whether or not the material
19           constitutes or contains Sensitive Information within the meaning of this Order—to
             any third party (i.e., any person who is not a member of the Defense Team) or
20           make any public disclosure of the same, other than in a court filing, without the
             government's express written permission or further order of this Court, except
21           that the Defense Team may show discovery materials produced by the
             government to witnesses in the course of preparing a defense for trial or any
22           related proceedings in this case, but only if (i) the witness, by reason of their
             participation in the underlying events or conduct, would have seen or had reason
23           to know such information, or (ii) it is otherwise relevant to the defense of the case
             that the Defense Team discuss with or show the witness the materials.
24  *Id.* ¶ 3.

25

26   _____

         [2] Given the expansive nature of Vinnik's criminal activities, the large amounts of money
27  laundered, and the length and sophistication of BTC-e's operations, this is a complex case with
    voluminous and sensitive discovery.
28
    U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
    CR 16-00227 SI

1    On December 15, 2022, one day before a scheduled status hearing, Vinnik filed a status report in

2  which he stated his intent to move to amend the Protective Order "for the purpose of advocating Mr.

3  Vinnik's inclusion" in a prisoner swap with Russia.  Dkt. No. 38 at 3-4.  Vinnik's counsel raised the

4  issue of his intended modification with the Court at the status hearing the next day.  After some

5  discussion, the Court took Vinnik's request for modification of the Protective Order under submission

6  and provided a tentative ruling on the matter.[3]  *See* Dkt. No. 40 (Criminal Minutes) at 1.

7    On December 16, 2022, in response to Vinnik's request, the Court issued an order amending the

8  Protective Order, stating as follows: "For the reasons discussed at the December 16, 2022 status

9  conference, the Court hereby AMENDS the protective order as follows: defendant may share

10 undesignated material with the United States State Department."  Dkt. No. 39.  In so doing, the Court

11 allowed defense counsel the flexibility to provide discovery materials to the United States State

12 Department so that he could advocate for a prisoner swap for his client.

13    On May 19, 2023, Vinnik filed the pending motion to amend the Protective Order, in which he

14 argues that the Protective Order is not the norm in this district and the equivalent of a gag order that

15 serves no practicable or justifiable purpose.  *See* Defendant's Motion to Amend Protective Order

16 ("Mot."), Dkt. No. 59 at 2, 3, 10-13.  He also argues that there is a constitutional and common law right

17 of access to the discovery produced by the government in this case.  *Id.* at 9.  Vinnik filed a proposed

18 Amended Protective Order along with his motion, in which he proposes to remove paragraphs two and

19 three of the existing Protective Order in their entirety.  *See* Dkt. No. 61.

20                                              **ARGUMENT**

21    **A.    Protective Order Terms Are Necessary to Protect Discovery Materials**

22    Rule 16(d)(1)—captioned "Regulating Discovery"—provides broad authority for the Court to

23 deny, restrict, or otherwise defer discovery or inspection of documents, or grant other appropriate relief,

24 upon a showing of good cause.  Fed. R. Crim. P. 16(d)(1); *see* 2 Charles Alan WRIGHT & PETER J.

25 HENNING, FEDERAL PRACTICE & PROCEDURE § 262 (4th ed. 2009) ("The discretion provided to the trial

26

27    ────────────────
      [3] At the hearing, Vinnik's counsel stated that "he would move to strike if the tentative [was]
28 adopted."  *Id.*

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI

1    court by Rule 16(d)(1) is vast.").  The Supreme Court has recognized that trial courts "can and should,

2    where appropriate, place a defendant and his counsel under enforceable orders against unwarranted

3    disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S.

4    165, 185 (1969).  Courts have approved protective orders to protect the safety of witnesses and others, to

5    avoid the danger of perjury, to protect national security or businesses from economic reprisal, and in

6    cases of voluminous discovery where redaction is impractical.  *See* WRIGHT & HENNING at § 262

7    (gathering cases).

8         In this case, there was, and remains, ample good cause for the Protective Order.  The discovery

9    in this case encompasses a large volume of records, including detailed financial records tied to Vinnik

10   and others, various communications, and records tied to multiple law enforcement investigations.  The

11   Protective Order in this case was crafted to ensure that Vinnik had access to the discovery materials in

12   custody, while providing the necessary protections.  *See, e.g., United States v. Fraijo*, No. CR-20-

13   00248-001-TUC-JCH, 2022 WL 1018385, at *1 (D. Az. Apr. 5, 2022) (finding good cause for protective

14   order for voluminous cellphone metadata to "safeguard identified personal information and expedite the

15   discovery process").  *See also In re Terrorist Attacks on September 11*, 2001, 454 F. Supp. 2d 220, 222

16   (S.D.N.Y. 2006) ("In cases of unusual scope and complexity . . . broad protection during the pretrial

17   stages of litigation may be warranted without a highly particularized finding of good cause.").  The

18   Protective Order applies basic protections to the discovery productions generally, and heightened

19   protections for the information meeting the specific criteria set forth in the Protective Order for as

20   "sensitive."

21        The only restriction on the vast majority of the documents produced in discovery is that they

22   must be used *in the defense of the criminal case* and cannot be shared with people who are not involved

23   in the defense of the criminal case.  The Protective Order thus affords the defense broad latitude to use

24   the discovery for its intended purpose, and as Rule 16 envisions: the defense of the criminal case.  The

25   restriction that the materials must be used *in the defense of the criminal case* is necessary and

26   appropriate, insofar as it prevents the unnecessary publication of information pertaining to uncharged

27   third-parties, co-conspirators, and potential witnesses.  Rule 16, like its civil counterpart in Federal Rule

28

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI

1    of Civil Procedure 26(c), recognizes that restrictions are properly placed on litigants' use of documents

2    they happen to receive through discovery.  *See* Fed. R. Evid. 16(d); Fed. R. Civ. P. 26(c) (authorizing

3    courts to issue protective orders "to protect a party or person from annoyance, embarrassment,

4    oppression, or undue burden or expense").  The defense's proposal would dispense with even that

5    baseline protection and permit the defense to share nearly any document from the voluminous

6    discovery—including communications of uncharged third-parties, information that could be used to

7    identify witnesses and co-conspirators, and information related to other law enforcement

8    investigations—for any purpose, with any individual, with no connection to the criminal case.  There is

9    good cause to ensure the Protective Order protects against such a result.

10          The government has been conservative and judicious in its designation of materials as sensitive

11   in order to facilitate Vinnik's review of the discovery materials while he is in custody.  Indeed, the

12   Protective Order is designed to allow Vinnik maximum flexibility to review non-sensitive discovery and

13   prepare for trial, and it narrowly defines "sensitive" materials to apply to a specific category of records

14   needing especially heightened protections.  The government relied on the provisions of the Protective

15   Order during the process of assigning sensitive categorizations to the materials.  *See Foltz v. State Farm*

16   *Mut. Auto. Ins. Co.*, 331 F.3d at 1137-38 ("The central concern in determining whether access should be

17   granted to documents sealed under a protective order is whether that order was relied upon in the

18   decision to produce documents.").

19          Thus, there are discovery materials in the government's production that—although they do not

20   bear a heightened "sensitive" designation—are not appropriate for public consumption.  For example, as

21   set forth above, the discovery produced by the government includes communications from co-

22   conspirators and uncharged third parties, as well as financial information belonging to others.  While

23   this information did not meet the high threshold for an official sensitive designation, any one of those

24   individuals would certainly consider it sensitive within the common meaning of the word and would not

25   expect it to be broadcast to the world.  Moreover, the government has also offered to defense counsel—

26   repeatedly—that it will consider and agree to carve out from the Protective Order specific materials that

27   carry no sensitivity or law enforcement interest preventing their disclosure if defense counsel first

28

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI

1    identifies them.  Yet, to date, defense counsel has not identified a single document that he wishes to use

2    to advocate for a prisoner swap.

3         Under the defense's proposed amendments, nothing would preclude the defense from publishing

4    the full body of discovery online or sharing with the Russian government directly.  The government

5    appreciates defense counsel's representation that he "has no intention of posting all of discovery online

6    just to prove a point." Dkt. No. 59 at 10.  Yet, defense counsel's assurances on this point indicate a

7    recognition that protection against such public disclosure is appropriate.  However, the needed

8    protections for the discovery should be set out in a Protective Order, not dependent on defense counsel's

9    current personal practices.  Furthermore, as explained further below, defense counsel's gratuitous

10   attachment of a law enforcement report to his filing—a document with no substantive bearing on the

11   motion—highlights the pitfalls of relying on defense counsel's self-imposed discretion.

12        **B.      Vinnik's Characterization of the Protective Order's Restrictions Is Exaggerated and Misleading**

13

14        Vinnik argues that the Protective Order should be discarded because it is not the norm in this

15   district and is the equivalent of a gag order that serves no practicable or justifiable purpose.  *See* Mot.,

16   Dkt. No. 59 at 2, 3, 10-13.  Vinnik's arguments dramatically overstate the actual restrictions of the

17   Protective Order, which is a far cry from a gag order and simply incorporates a commonsense restriction

18   appearing in numerous other Protective Orders for complex cases.

19        First, Vinnik characterizes the Protective Order as an aberration and compares it to the model

20   protective orders posted on the Court's website.  Mot. at 8 (stating that "[n]either of these restrictions are

21   customary in this district or included in the model protective orders posted on the Court's website.").

22   This is untrue.  Courts in this district have repeatedly executed protective orders with similar or identical

23   language. *See, e.g., U.S. v. Karlsson,* 3:19-cr-340-CRB, Dkt. No. 37 at 3[4]; *U.S. v. Ryan Mark Ginster*,

24   3:22-cr-00374-JSC, Dkt. No. 13[5]; *U.S. v. Kimberly Dominguez and Erick Dominguez*, 19-cr-591-HSG,

25        [4] "IT IS FURTHER ORDERED that no member of the Defense Team shall provide any

26   discovery material produced by the government—whether or not the material constitutes or contains Protected Information within the meaning of this Order—to any third party (i.e., any person who is not a member of the defense team) or make any public disclosure of the same, other than in a court filing,

27   without the government's express written permission or further order of this Court.")

28        [5] "IT IS FURTHER ORDERED that neither a defendant nor any member of the defense team

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI

7

1    Dkt. 13 (same language); *U.S. v. John Francis Porter*, 3:22-cr-00270-WHO, Dkt. No. 58 (same

2    language); *U.S. v. Manish Lachwani*, 3:21-cr-00353-CRB, Dkt. 27 (same language); *U.S. v. Thomas*

3    *Henderson et al.*, No. 19-cr-00376-RS (same language); *U.S. v Nashatka and Gunton*, 3:19-cr-00372-

4    EMC, Dkt. No. 6 at 3 (same language).  "[L]itigants and the courts assume that the sole purpose of

5    discovery is to assist trial preparation," which is "why parties regularly agree, and courts often order,

6    that discovery information will remain private."  *United States v. Anderson*, 799 F.2d 1438, 1441 (11th

7    Cir. 1986).  *Accord Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1316 (11th Cir.

8    2001); *United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013).

9           Moreover, with respect to the model protective orders posted on the Court's website, only one of

10   those pertains to criminal cases, and it is specifically designated for "Non-Complex Criminal Cases."

11   *See* https://www.cand.uscourts.gov/forms/model-protective-orders/.  As noted above, this is a complex

12   criminal case, so that model order is not applicable.  Further, the court website specifically states that

13   "[t]he Local Rules do not require the parties to use any of the model protective orders and counsel may

14   stipulate to or move for another form of protective order." *Id.*  Moreover, the model protective order for

15   criminal cases, aptly titled "Model Protective Order for Non-Complex Criminal Cases," has a clear

16   disclaimer on page one of the order, which states, in relevant part, as follows: "This sample Protective

17   Order ("Order") is not intended to cover every situation . . . [t]hose situations, *among others, may*

18   *require more robust protections than are contained in this sample Order.  The Court and the parties*

19   *should tailor any proposed protective order to suit the needs of a particular case.*" *Id.* n.1 (emphasis

20   added).

21          Second, Vinnik attacks the protective order as imposing an "unjustified" and "extraordinary"

22   level of secrecy over the discovery in this case.  *See* Mot. at 10, 13.  Vinnik claims that the Protective

23   Order is so restrictive that it prevents him or his team from commenting publicly or talking to his priest

24   or family about the case.  *Id.*  Although he places significant emphasis on his inability to speak with his

25

26   shall provide any discovery material produced by the government—whether or not the material
     constitutes or contains Protected Information within the meaning of this Order—to any third party (i.e.,
27   any person who is not a member of the defense team) or make any public disclosure of the same, other
     than in a court filing, without the government's express written permission or further order of this
28   Court."

     U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
     CR 16-00227 SI

                                                      8

1  priest, it is unclear how exactly he is prevented from seeking religious support or what relevance his

2  priest has to discovery materials.  Does he wish to show his priest an investigative report from a federal

3  law enforcement agency?  If so, for what purpose?  Vinnik is free to talk about his involvement in the

4  case and the allegations against him all he wants.  Indeed, he can even transfer the discovery itself to

5  officials at the United States Department of State.  *See* Dkt. No. 39.  He can also file discovery materials

6  on the docket insofar as necessary to defend the charges against him.  What he cannot do is disclose or

7  publish discovery documents for a purpose outside the defense of his case or in connection with other

8  proceedings or transfer them to Russian officials or the media.

9          Third, Vinnik criticizes the government for its press releases in connection with the indictment

10  and extradition in this case.  *See* Mot. at 12.  However, the government's statements in those releases

11  were limited to the allegations in the charging documents.  The government did not attach discovery

12  materials to the release or otherwise disclose any information not existing in the public domain.  Vinnik

13  is entitled to make the very same communications with the press and public if based on materials in the

14  public record.  Accordingly, Vinnik's characterization of what he essentially argues is a double standard

15  is simply not true.

16          **C.       There is Good Cause for the Existing Terms of the Protective Order**

17          Vinnik claims that because a majority of the discovery materials have not been designated as

18  "Sensitive Information," no harm could come from their public disclosure, asserting that "these

19  voluminous materials may be filed on the public docket in this case without sealing under the terms of

20  the existing protective order."  Mot. at 10 (referencing, among other things, law enforcement reports,

21  search warrant materials, evidence of blockchain transactions that are already public, and articles from

22  the news media).  To prove his point, defense counsel attached an HSI report of investigation to

23  highlight the possibility of publicizing documents through court filings, notwithstanding their otherwise

24  irrelevance to any issue.  *See* Dkt. No. 60-8 (Exhibit H in Support to Declaration of David Rizk).  This

25  argument fails on several fronts.

26          First, simply because certain documents have not been designated as "sensitive" does not make

27  them suitable for public consumption.  Many of the discovery materials contain information that could

28

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI

1  fairly be characterized as sensitive, but the government has taken a very conservative approach in its

2  designation in order to facilitate Vinnik's access to the discovery materials while in custody.

3  Government counsel made this intent abundantly clear to defense counsel on several occasions, so it is

4  disingenuous for him to now claim that those materials deserve no care whatsoever.

5         Second, with respect to the discovery materials that already exist in the public domain, Vinnik

6  may refer to those without restriction. *See* Mot. at 10 (arguing that "evidence of blockchain transactions

7  that are already public, and even articles from the news media" have "no conceivable sensitivity or

8  confidentiality that should attach to it.").

9         Third, real harm could result from public disclosure of much of the discovery.  In his motion,

10  Vinnik states that he was the target of an assassination effort.  Mot. at 4.  Particularly with respect to

11  investigative reports detailing Vinnik's, his co-conspirators' and others' activities, and communications

12  between numerous parties, many people could in fact be at risk—including Vinnik himself—if

13  information were inappropriately disclosed outside of the defense team.  After all, as the Superseding

14  Indictment alleges, BTC-e, through the efforts of Vinnik and his co-conspirators, was one of the primary

15  ways by which criminals around the world—including cyber criminals, computer hackers, ransomware

16  actors, fraudsters, corrupt public officials, and narcotics distribution rings—transferred, laundered, and

17  stored the criminal proceeds of their illegal activities, in the billions of dollars.  *See* Superseding

18  Indictment ¶¶ 1-5.

19        **D.**    **Advocating for a Prisoner Swap Is Not Part of the "Defense of This Case" Within the Meaning of the Protective Order**

20
21         Nothing about the Protective Order prevents defense counsel from advocating for a prisoner

swap.  Indeed, defense counsel discusses his efforts on this front in his motion.  *See* Mot. at 5-6.

22  However, advocating for a prisoner swap is not within the purview of "the defense of this case" for

23  purposes of the Protective Order.  *See* Dkt. No. 29 ¶ 2 ("All materials provided by the United States *in*

24  *preparation for*, or *in connection with*, any stage of *this case* . . . may be used by the defendant and

25  defense counsel *solely in connection with* <u>*the defense of this case*</u> *and for no other purpose* and in

26  connection with no other proceeding . . . .") (Emphasis added.)  Dissemination of the discovery

27
28

1   materials to the Russian government, or to the press, would not relate to the defense of this case and

2   would therefore be a violation of the Protective Order.

3         Vinnik has been charged in a 21-count indictment with a series of criminal offenses.  Criminal

4   cases involve a variety of filings and hearings (e.g., suppression hearings, detention hearings, changes of

5   plea, pretrial hearings, trial, sentencing hearings, etc.).  Prisoner swaps are not common, and are

6   tangential and not part of "any stage of this case" or the "defense of this case" itself.  Accordingly,

7   Vinnik's attempts to frame prisoner swap negotiations as forming part of the criminal proceedings,

8   through which use of criminal discovery materials should be equally applicable and accessible, should

9   be summarily rejected.

10        **E.**      **The Public Does Not Have a Right to Access to the Discovery Materials**

11         Vinnik incorrectly argues that there is a constitutional and common right of access to the

12   discovery produced by the government in this case.  Mot. at 9.  The Supreme Court has long held that

13   there is no common law or First Amendment public right of access to discovery information.  *Seattle*

14   *Times Co. v. Rhinehart*, 467 U.S. 20, 33, 36 (1984).  The qualified First Amendment right of access to

15   judicial proceedings and documents simply does not extend to discovery materials.  *Id.* at 37.  There is

16   no general right of access to information that a government official knows, but has not released to the

17   public.  *See United States v. Blagojevich*, 612 F.3d 558, 562 (7th Cir. 2010); *L.A. Police Dep't v. United*

18   *Reported Publ'g Co.*, 528 U.S. 32, 40, (1999) (no First Amendment right to names and addresses of

19   arrested individuals); *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978) (no First Amendment right to enter a

20   county jail, interview inmates, and take pictures)).

21         Materials from criminal investigations are not "judicial records under federal law, the public has

22   no presumptive right of access to them."  *United States v. Loughner*, 807 F. Supp. 2d 828, 834 (D. Ariz.

23   2011); *see also Rhinehart*, 467 U.S. at 33 ("[R]estraints placed on discovered, but not yet admitted,

24   information are not a restriction on a traditionally public source of information."); *Kravetz*, 706 F.3d at

25   54 ("With respect to experience, there is no tradition of access to criminal discovery.  To the contrary,

26   '[d]iscovery, whether civil or criminal, is essentially a private process because the litigants and the

27   courts assume that the sole purpose of discovery is to assist trial preparation.'"); *Anderson*, 799 F.2d at

28

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI

1   1441 ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the

2   courts assume that the sole purpose of discovery is to assist trial preparation."). Vinnik's attempt to

3   invoke the First Amendment is overstated and meritless.

4           Furthermore, filing discovery materials on the public docket does not automatically trigger a

5   right of public access. Vinnik's argument that he can publicly file on the docket any discovery materials

6   not designated as sensitive ignores the requirement that that filings on the criminal docket must be

7   relevant to issues in the criminal case and are intended to adjudicate live issues. *See United States v.*

8   *Carpenter*, No. 2:14-cr-309-GEB, 2018 U.S. Dist. LEXIS 132024, *2 (E.D.Cal. Aug. 6, 2018) (*citing*

9   *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("the mere filing of a paper or document with

10  the court is insufficient to render that paper a judicial document subject to the [common law] right of

11  public access. . . . [T]he item filed must be relevant to the performance of the judicial function and

12  useful in the judicial process in order for it to be designated a judicial document [subject to the common

13  law public access doctrine]"). The discovery materials at issue here are not judicial records at all—they

14  are materials exchanged from the government to the defense and do not go through the Court in the

15  discovery production process. That the Protective Order does not restrict the defense from using

16  discovery in support of active issues in litigation brought before the Court merely highlights the

17  reasonableness of the provision at issue. The Court's docket is not a pass-through system for a

18  defendant to sidestep the Protective Order's terms on a technicality, the defense's most recent filing

19  notwithstanding.

20          Furthermore, public interest in Vinnik's criminal case does not generate a right of access to all

21  discovery materials. *See Amodeo*, 71 F.3d at 1050. Indeed, no public right of access exists with respect

22  to materials produced during the initial stages of discovery. *Id.* While a presumption of public access

23  exists as to documents filed with the court, "documents that play no role in the performance of Article

24  III functions, such as those passed between the parties in discovery, lie entirely beyond the

25  presumption's reach and stand on a different footing than a motion filed by a party seeking action by the

26  court, or, indeed, than any other document which is presented to the court to invoke its powers or affect

27  its decisions." *Id.* (internal quotations, citations, and alteration omitted).

28

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI

1

2

**F.      Vinnik Has No Standing to Bring First Amendment or Common Law Right of Access Claims**

3

Even if Vinnik could theoretically overcome the fact that there is legally no right of access to the

4

nonpublic discovery materials at issue and the other points set forth above, Vinnik's argument fails

5

because he has no standing to bring a First Amendment or common law right of access claim.  The

6

standing question here is not whether Vinnik suffered an "injury in fact" sufficient to make his claim a

7

live case or controversy.  Rather, the inquiry is a prudential question of third-party standing: whether

8

Vinnik is a proper proponent of any common law or First Amendment right of access to court filings

9

when his right to access to the documents derives from the Sixth Amendment.  "[A] litigant must assert

10

his or her own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of

11

third parties."  *Powers v. Ohio*, 499 U.S. 400, 410 (1991); *see also IMS Health, Inc. v. Ayotte,* 550 F.3d

12

42, 49 (1st Cir. 2008) ("A party ordinarily has no standing to assert the First Amendment rights of third

13

parties.") (quotation marks omitted).  Under this rule, a litigant can only bring an action on behalf of a

14

third party where three criteria are met: "The litigant must have suffered an injury in fact, thus giving

15

him or her a sufficiently concrete interest in the outcome of the issue in dispute; the litigant must have a

16

close relation to the third party; and there must exist some hindrance to the third party's ability to protect

17

his or her own interests."  *Powers*, 499 U.S. at 410–11 (internal quotations and citations omitted).

18

Assuming, *arguendo*, that a third party has suffered a constitutional injury—an assumption

19

without any support in the record—the other criteria are not met.  First, because Vinnik is protected by a

20

different right than the public, the relationship between Vinnik and a third party is not such that Vinnik

21

will be an equally strong proponent of the right of access.  *See Singleton v. Wulff*, 428 U.S. 106, 115

22

(1976).  Second, there is no impediment to the members of the public or media asserting a right of

23

access to the materials at issue.  *See id*.

24

Importantly, although the right of access to court documents attaches to the press and public at

25

large, this right does not attach to Vinnik because he is not a member of the public whose only interest

26

in the litigation is access to court documents.  *Cf. United States v. Hickey*, 185 F.3d 1064, 1066 (9th Cir.

27

1999) ("The government, however, lacks third-party standing to assert this right [to access] on behalf of

28

the public in this case.  The government is the prosecutor, not a third party whose sole interest in the

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI

13

1  litigation is access to documents.")  Therefore, Vinnik is not the proper proponent of these rights

2  because he is protected by the Sixth Amendment right to a public trial; to the extent the First

3  Amendment or common law provides a right to court documents, that right should only be asserted by

4  the public or media.  *See Singleton*, 428 U.S. at 114 ("[T]hird parties themselves usually will be the best

5  proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to

6  construe legal rights only when the most effective advocates of those rights are before them.")

7  Therefore, Vinnik lacks standing to raise a First Amendment or common law right of access to

8  discovery, and his motion should be dismissed.

9                                                   **CONCLUSION**

10          There is good cause for the Protective Order in this case.  The discovery materials provided to

11  the defense include information tied to other cases and investigations and include other people's

12  communications and financial information that, although not explicitly designated as "sensitive," do not

13  belong in the hands of the public or individuals with no direct bearing on the legal case before this

14  Court.  Vinnik has a detailed charging document as well as his own knowledge about the facts and his

15  conduct that he is free to share with the world.  For these and the other reasons set forth above, Vinnik's

16  motion lacks merit and should be denied by the Court.

17

18  DATED:  May 26, 2023                                Respectfully submitted,

19                                                      ISMAIL J. RAMSEY
                                                        United States Attorney
20

21

                                                        ___/s/_____
22                                                      CLAUDIA QUIROZ
                                                        KATHERINE LLOYD-LOVETT
23                                                      Assistant United States Attorneys
                                                        C. ALDEN PELKER
24                                                      Trial Attorney, CCIPS
                                                        Assistant United States Attorney
25

26

27

28

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI
                                                      14