Pages 1 - 36

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SUSAN ILLSTON, JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 16-cr-00227-SI |
| | ) | |
| ALEXANDER VINNIK, | ) | |
| | ) | |
| Defendant. | ) | San Francisco, California |
| _____ | ) | |

Friday, June 30, 2023

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**


For Plaintiff:          ISMAIL RAMSEY
                        450 Golden Gate Avenue, 11th Floor
                        San Francisco, California  94102
                  **BY:  CLAUDIA QUIROZ**
                        **ASSISTANT UNITED STATES ATTORNEY**

For Defendant:          JODIE LINKER
                        Federal Public Defender
                        450 Golden Gate Avenue
                        Room 19-6884, Box 36106
                        San Francisco, California  94102
                  **BY:  DAVID W. RIZK**
                        **DEPUTY FEDERAL PUBLIC DEFENDER**




Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
              Official Reporter, U.S. District Court

<u>**Friday - June 30, 2023**</u>                                    <u>**11:24 a.m.**</u>

<u>P R O C E E D I N G S</u>

**THE COURTROOM DEPUTY:**  Now calling Criminal Matter 16-227, United States versus BTC-E and Alexander Vinnik.

Counsel, please state your appearances for the record, starting with the government.

**MS. QUIROZ:**  Good morning, Your Honor.  Claudia Quiroz for the government.

**MR. RIZK:**  Good morning, Your Honor.  David Rizk for Alexander Vinnik.  He requests that his appearance be waived under Rule 403, since this is primarily a status hearing.

**THE COURT:**  Is that okay with the government?

**MS. QUIROZ:**  It's not, Your Honor, and I'll explain why.  This is not just a routine scheduling conference. Unfortunately --

**THE COURT:**  I think he should be here.

**MR. RIZK:**  Okay.

**THE COURT:**  Where is he?

**MR. RIZK:**  He's at Santa Rita.  I submitted -- your CRD asked me whether he would plan to be here or not, and -- earlier this week.  And I said that his inclination was not to be, and I filed a waiver.

**THE COURT:**  Did I sign it?

**MR. RIZK:**  I don't think it requires a signature.

**THE COURT:**  Oh, he signed --

1          **MR. RIZK:**  I don't think it requires a signature,

2     typically.

3          **THE COURT:**  Well, let's go ahead, because there are

4     some issues that we have to decide.  But I agree with

5     Ms. Quiroz, we ought to have him here.  So the conclusion,

6     whatever we decide, you need to convey to him (Audio

7     distortion) appearance so that I can make sure he understands.

8          But there are hefty differences of opinion between you on

9     the issues today.  So it's important that he be aware of all of

10     that.

11          **MR. RIZK:**  I have, of course, discussed the issues

12     with him.  I had a call with him yesterday, at some length,

13     about these issues.

14          But I understand the Court's position.

15          **THE COURT:**  All right.  Thank you.  In the old days we

16     would just hook him up by video.  But we can't do that now.

17          **MR. RIZK:**  Yeah.

18          **THE COURT:**  So you've each submitted a status report.

19     But really, there are issues you want resolved.

20          The first one, let me talk about, is the language of the

21     protective order.  And I'll tell you, Mr. Rizk, I agree with

22     the government on this one.  This provision allows the defense

23     team or the defendant to discuss or disclose particular

24     non-sensitive facts, even though those facts may have

25     originated from the review of the discovery materials.

1          So, as I see it, it would only prevent the third parties

2     from having the discovery materials.

3          Is that right, Ms. Quiroz?

4          **MS. QUIROZ:**  Yes, Your Honor.  If I may turn to the

5     language of the protective order.

6          **THE COURT:**  It's Page 2 of your -- or 3 -- no, 2 of

7     your filing.

8          **MS. QUIROZ:**  Yes.

9          **MR. RIZK:**  I don't think that's really the -- where

10    the parties disagree.

11         **THE COURT:**  Okay.  Where do they disagree?

12         **MR. RIZK:**  The parties disagree -- most of the

13    paragraph that's in the government's filing, Page 2 or so of

14    it, we're all agreed on.  The only thing that we disagree is

15    whether third parties should have to initial and date the

16    protective order and agree to be bound by it, in order to see

17    discovery.

18         **THE COURT:**  Right.  And I think they should.

19         **MR. RIZK:**  So I just don't -- I don't understand the

20    legal basis for that.  I've never had --

21         **THE COURT:**  You don't get to see it unless they agree

22    to that.  That's all.  That happens all the time.

23         **MR. RIZK:**  That impairs my ability to -- what if they

24    don't agree to it?  Then I can't --

25         **THE COURT:**  The document -- you can still talk to

 1   them, you can tell them what's in the document.  But you can't

 2   show them the document.

 3        Isn't that right?

 4             **MS. QUIROZ:**  That's right, Your Honor.

 5             **MR. RIZK:**  I don't know how to prepare a case if I

 6   can't show a witness discovery.  I mean...

 7             **THE COURT:**  We're talking about -- well, then the

 8   witness needs to sign.  That's all.

 9             **MR. RIZK:**  Yes, but third parties and a witness is --

10   "third parties" cover witnesses.  And so that prevents my

11   ability to -- to prepare witnesses.  I mean, they're under no

12   compulsion to sign that order.

13             **THE COURT:**  Well, then, they don't get to see the

14   document.  But you can explain what's in the document to them.

15             **MR. RIZK:**  I don't see how I can adequately prepare to

16   defend a case like that.  I mean -- well, first of all, because

17   you have to be able to show witnesses documents in a case.

18   Especially a complicated case like this.

19             **THE COURT:**  Well, then they just -- they can't share

20   that with others.  That's all.

21             **MR. RIZK:**  No, but even -- it's not even sharing it

22   with others.  It's I can't show them a document, a piece of

23   discovery, unless they agree to be bound by a court order.  And

24   if they don't agree to that, then it impairs my ability to

25   defend the case.

1          And, I don't think, respectfully, that the Court is able

2     to bind non-parties through a protective order in that way.

3          **THE COURT:**  For example, let's say -- and this

4     happened this week.  Let's say there's a temporary restraining

5     order or a preliminary injunction involving knock-off goods.

6     Say it's trade dress or infringement.

7          **MR. RIZK:**  Uh-huh.  Uh-huh.  Uh-huh.

8          **THE COURT:**  The order from the Court can say: And

9     anybody else who gets this order is precluded from --

10         **MR. RIZK:**  Right.

11         **THE COURT:**  -- dealing in these counterfeit drugs.

12    It's the same kind of thing.

13         **MR. RIZK:**  It's actually not, though.  And the case

14    that I cited I'd urge the Court to look at, because the *Eli*

15    *Lilly* case is exactly that scenario.

16         And, there, an expert received confidential documents from

17    the pharmaceutical company.  I'll direct you to it.

18         I apologize, I failed to cite it.  But I'm happy to

19    provide it to the Court.

20         Let me tell you what the case is.  There, an expert

21    involved in litigation received documents from a pharmaceutical

22    company.  And the expert thought the pharmaceutical -- the

23    documents put the pharmaceutical company in a bad light.  And

24    he wanted to publicize them.  He signed the protective order.

25         So then he found somebody with sympathetic views to him,

1  gave the documents -- told him about -- told this other person,

2  a lawyer, about the documents, apparently.  And the lawyer

3  manufactured a way to subpoena the documents through another

4  matter.  And then, gave them to the press.  And that would be

5  aiding and abetting, right, a violation of the protective

6  order.

7        And so then the drug company filed a lawsuit and obtained

8  a restraining order -- like Your Honor's mentioning -- against

9  the attorney, right, for aiding and abetting a violation of the

10  protective order.  But the issue was the attorney was not

11  covered by the protective order.

12        **THE COURT:**  Right, because the expert didn't ask him

13  to sign.

14        **MR. RIZK:**  Right.

15        **THE COURT:**  The expert violated it by giving it to

16  the --

17        **MR. RIZK:**  Correct.  So the Court's analysis was not

18  that the attorney who did the wrongful conduct was bound by the

19  protective order --

20        **THE COURT:**  No, because he hadn't even seen it.

21        **MR. RIZK:**  Correct.  Correct.  Well, and other

22  reasons, but also there is a general proposition of law --

23  which is supported and articulated in the case law that I've

24  mentioned to you -- directly says, as a general matter,

25  protective orders cannot bind non-parties.

 1          And I just don't think the Court -- respectfully, again --

 2     that the Court has jurisdiction and power over non-parties to

 3     this case.  I don't think them seeing the Court order changes

 4     that.  I think the remedy is if the government thinks that

 5     there's some violation, they can go out and file a lawsuit and

 6     try to restrain somebody.

 7          But, I mean, to suggest that I'm going to be the conduit

 8     of that as an officer of the Court, I have no intention of

 9     doing that.

10          But it severely impairs my ability to prepare a case if

11     I'm unable to show a witness discovery in the case because they

12     won't agree to be bound.  And if I were a lawyer for such a

13     witness, I would advise them not to agree to be bound by the

14     protective order, because they're not a party and the Court

15     doesn't have power over them.

16          **THE COURT:**  Hm.

17          **MR. RIZK:**  So I think, I think there is a remedy for

18     the concern that -- that -- that, you know, if a protective

19     order is violated, there is a way to address it.  It's just not

20     through the protective order, because the protective order

21     can't bind third parties that are not a party to this case.

22          It is totally different, of course, for the defense team,

23     the parties, like the lawyers in front of you.  Of course, we

24     are subject to regulation, and my client's subject to

25     Your Honor's regulation.  But just third parties out in the

 1  world, people maybe in different countries or anywhere, like, I

 2  don't think the Court is able to hold them in contempt just

 3  because -- and -- just because they've done something with a

 4  document that they've seen, or -- it's just a huge practical

 5  problem for me, prepping the case.

 6      How do I -- what am I supposed to do with witnesses who

 7  refuse to be signing and agreeing to this order, *ultra vires*?

 8      And, I mean, the other problem, the practical problem is

 9  the protective order, itself, its language doesn't have any

10  clear restrictions that are expressed that apply to third

11  parties.  Like, there's no -- there's no passage that says:

12  Dear Third Parties, you may not do this, or you may do this.

13  So there's a major notice problem as well.

14      Why, why is that not surprising?  Because protective

15  orders don't bind third parties.  It is routine for litigation

16  teams and parties to sign and initial the attachment to a

17  protective order.  That's what we're doing in this case.  All

18  my team has signed it, you know; my client has signed it.  We

19  have an addendum.

20      But for non-parties, those are just beyond the ken of the

21  Court's jurisdiction.  And I don't know how I would prepare the

22  case.  I mean, I will have to seriously take -- consider taking

23  an appeal on the issue.

24          **THE COURT:**  Well, you are certainly entitled to do

25  that.

1          Ms. Quiroz?

2          **MS. QUIROZ:**  Your Honor, the government disagrees with

3    Mr. Rizk.  The Court has broad authority to bind third parties.

4    We have to -- I think we should take a step back and remember

5    why we are fighting over this, and the last hearing we had on

6    the issue, which is, you know, we can't have these materials be

7    served to third parties, have the defense just wash their

8    hands, say: Well, we didn't -- you know, we're abiding by the

9    protective order, and then have these third parties -- free

10   rein to disclose these materials that -- you know, I won't

11   repeat everything that I've argued before, but the concern that

12   the government has with these materials being shared with

13   foreign governments, et cetera.  It does not prohibit any third

14   party from just passing it on.

15         You know, there's a case -- and I can pass a copy to the

16   Court and defense counsel.

17         (Document handed up to the Court)

18         (Document tendered to counsel)

19         **MS. QUIROZ:**  And it's *Static Media versus Leader*

20   *Accessories*, 2022 case, where -- it's a Federal Circuit case in

21   which a protective order included a written assurance that

22   third parties had to sign before receiving confidential

23   information.  And essentially, the Court upheld the validity of

24   the written assurance itself, finding that having a third party

25   sign a written assurance before disclosure and asking him to

1  comply with the protective order was not -- you know, basically

2  upheld it.

3       And so I don't really understand Mr. Rizk's argument that

4  he cannot -- he can't talk to witnesses, he can't prepare just

5  by having somebody abide by these restrictions.  These

6  materials, you know, should be protected.

7            **MR. RIZK:**  I have a couple comments.  First of all --

8            **THE COURT:**  Just a second, Mr. Rizk.

9       Are you finished?

10           **MS. QUIROZ:**  Yeah, just a couple minutes, Your Honor.

11      The model protective order that's on the Court's website

12  does contain a provision for, you know, members of the defense

13  team and experts to initial and sign.  So experts, arguably,

14  are considered third parties.  And that is in the model

15  protective order.  So the same would apply.

16      Defense counsel states in his filing that this is an

17  entirely new provision.  It is not an entirely new provision

18  that we just sprung on the defense.  It's Paragraph 8 of the

19  existing protective order which the Court signed, which has

20  similar language.

21      And again, in the case that Mr. Rizk cited to, *SEC versus*

22  *Merrill Scott*, it's -- again, it reads that the Court -- you

23  know, there was a Court finding, as represented in this filing.

24  And it's really not on point.  So I don't -- you know, the

25  government doesn't really find defense counsel's arguments

1   persuasive.

2        And the Court does have broad authority to proceed in the

3   way the Court has indicated.

4        **MR. RIZK:**  My comments are the following:

5        When government counsel says she has concern about what

6   could happen with third parties getting these documents, the

7   first problem is it's the government's burden to identify some

8   harm that flows from disclosure of documents.  That's the

9   bedrock of protective orders.  And it's the government's burden

10  to do that.

11       And in this case, we're not talking about documents the

12  disclosure of which would harm anybody.  They have never

13  articulated any harm that is -- we're talking about all

14  discovery in the case, including primarily -- this is what the

15  focus is -- non-sensitive documents.  Sensitive documents,

16  totally different ballpark.  But we're talking about documents

17  that are non-sensitive and for which the government cannot

18  articulate any harm.

19       Secondly, the Department of Justice in the case that I

20  cited argued to the Court, quote (As read):

21            "Because the U.S. Attorney and DOJ was not a

22            party to the protective orders, they could

23            not be bound or limited by them."

24       That was their position.  That was the general

25  proposition.

1      I haven't read this Federal Circuit case, but my initial

2   impression -- my initial reaction to that is the fact that this

3   is a criminal case is probably pretty important.  Because

4   Mr. Vinnik's right to defend himself, the defense function, I

5   think is dramatically limited if third parties, including

6   witnesses, are forced to sign a court order.

7      And what is in the existing protective order is not that,

8   at all.  It's:  Defense counsel and the defense team has to

9   sign the protective order.  That is standard.  That is routine.

10      I can't think of a single case I've ever defended in where

11   third-party witnesses or other third parties have to sign a

12   court order and agree to be bound by it in order to see

13   discovery.  And certainly not in a criminal case.

14          **MS. QUIROZ:**  And experts.  As I noted, Your Honor, it

15   says "experts" in the language.

16          **THE COURT:**  Oh, experts.

17          **MR. RIZK:**  The experts are not at issue.  Experts are

18   not at issue.

19          **MS. QUIROZ:**  But they are the core (inaudible) of the

20   third party.  Your Honor, without this clause, all of the

21   negotiations, all of the arguments -- this protective order is

22   essentially eviscerated.

23          **THE COURT:**  Well, and Mr. Rizk, the thing is I've

24   never had a case before where a lawyer came in and said: I want

25   to negotiate in the press for the trade of my client with a

1    foreign government.

2              **MR. RIZK:**  Understood.  But that's --

3              **THE COURT:**  That's just a whole different ballgame.

4              **MR. RIZK:**  And that's not the ballpark that we're in

5    right now.  Because we're talking about -- I'm not allowed to

6    show any discovery to anybody for purposes of lobbying for a

7    prisoner swap.  We're talking about my ability to show

8    documents to third parties and witnesses for the defense of the

9    case.  That's the context of this.  Not for prisoner swap.

10   That is explicit; there's no dispute about that.

11             **THE COURT:**  Where is it explicit?

12             **MR. RIZK:**  Do you disagree?

13             **MS. QUIROZ:**  If you look at the paragraph, Your Honor,

14   Paragraph 3 does discuss, it says -- I will read it.

15       It's in -- I actually reproduced the text of it in my

16   submission (As read):

17               "Neither the defendant nor anyone with the

18               defense team shall provide any discovery

19               material produced by the government, whether

20               or not the material constitutes or contains

21               sensitive information within the meaning of

22               this order, to any third party, I.e., any

23               person who is not a member of the defense

24               team, or make any public disclosure of the

25               same, other than in a court filing, without

```
 1                  the government's express written permission

 2                  or further order of this Court.  Except that

 3                  the defense may show discovered materials

 4                  produced by the government to third parties,

 5                  including witnesses and consultants, in the

 6                  course of preparing the defense of this case,

 7                  at trial."

 8           Which is what Mr. Rizk is referring to.

 9                   "Or any..."

10           THE COURT:  "Or any related proceedings in this case."

11           MS. QUIROZ:  "...related proceedings in this case."

12           MR. RIZK:  My understanding of this is that it's for

13   defending this case.  And that was the understanding of the

14   parties.

15       The way the parties resolved the prisoner swap negotiation

16   issue is that I'm unable to show any discovery material to any

17   third party, like a member of the press or anybody like that.

18   That's the last sentence --

19           MS. QUIROZ:  Well --

20           MR. RIZK:  -- in this paragraph, which is that

21   (As read):

22                  "This paragraph applies to disclosure of the

23                  discovery materials, themselves, as well as

24                  detailed substantially verbatim recitations

25                  of their contents.
```

1              "However, this paragraph does not prevent the

2              defendant or the defense team from discussing

3              or disclosing particular non-sensitive facts

4              of the case..."

5          Notwithstanding that I may have learned them in discovery.

6          So the way this practically works is for purposes of

7     prisoner swap, I can discuss the case.  I can't read discovery

8     to any third party, and I can't show discovery to any third

9     party.  But, for defending the case, I'm allowed to show all

10    discovery, or, or non-sensitive discovery, I should say -- to

11    witnesses, including third parties.  And the definition of

12    "third parties" does not include the defense team; it does not

13    include experts.

14         And I'm able to show witnesses and third parties discovery

15    in the case, solely for the point -- solely for the purpose of

16    defending the case, and related proceedings.  And I do not --

17    "related proceedings" is pretty common in protective orders.  I

18    do not interpret that to mean lobbying for a prisoner swap.  I

19    interpret it to mean litigating this case in this courtroom,

20    defending in trial, and litigating an appeal, if necessary.

21    And that's it.

22         **MS. QUIROZ:**  Your Honor, I'm glad to hear defense

23    counsel saying that, because in his previous filings he

24    interpreted the defense of the case to include advocating for

25    prisoner swap.

1      And going back to Paragraph 3 --

2          **MR. RIZK:**  We compromised.  We com- -- that was the

3  compromise we reached.

4          **MS. QUIROZ:**  Which is why I said I was glad defense

5  counsel has made the statement.

6      In going back to the middle of Paragraph 3, the sentence

7  at issue is a standalone sentence.  It says (As read):

8              "Any third party to whom the defense

9              discloses government materials..."

10         **THE COURT:**  Slow down.

11         **MS. QUIROZ:**  Sorry.

12             "Any third party to whom the defense

13             discloses discovery materials shall also be

14             provided..."

15     Et cetera, et cetera.  And then there's a clause at issue.

16             "...with a copy of this order, along with

17             those materials.  And shall initial and date

18             the order reflecting their agreement to be

19             bound by it..."

20     Et cetera.

21     So, you know, that sentence does not specify defense of

22  the case, specifically.

23         **THE COURT:**  Well, I understand better now what you're

24  talking about.

25     Mr. Rizk, would you agree to take out "or any related

1    proceedings in this case"?

2            **MR. RIZK:**  Yeah.  Certainly.

3            **THE COURT:**  I'm going to strike that.  It will just

4    say "preparing the defense of this case at trial," I guess, "or

5    appeal," if you want that.

6            **MR. RIZK:**  Fine.

7            **MS. QUIROZ:**  But, Your Honor, go back.  Defense

8    counsel may show discovery materials to a third party for his

9    purpose, for defense of the case.  But that third party could

10   take and do whatever they want with it, without having an

11   obligation to abide by it, or sign it, or be aware of the

12   protective order.

13           **THE COURT:**  Well, they're going to have to be provided

14   with a copy of this order, along with the materials.

15           **MR. RIZK:**  I will provide them -- I'm happy to be

16   ordered to provide them a copy of the order, but I don't think

17   I can tell them that they're bound by it.  I just don't think

18   that's true, on the law.  And I'm not in a position to be

19   advising witnesses what their rights, or whether they're bound

20   by a court order.  I can't do that.

21       That will really severely my ability to talk to witnesses,

22   and will be unethical, from my perspective.  I think my office

23   would say:  You cannot approach witnesses and tell them that

24   they're bound by a court order, or what their rights are, under

25   this order.

1    I don't even know what restrictions would apply from the
2    protective order, because it's unaddressed to third parties.

3         **MS. QUIROZ:**  And Your Honor, we're not asking Mr. Rizk
4    to provide legal advice to third parties.  But, if provided
5    with a copy of the protective order with the discovery
6    materials, and they're just asked to -- you know, to initial,
7    date, and reflect their agreement to be bound by it, um, we
8    don't see what the harm is.  It doesn't --

9         **THE COURT:**  Is there a provision here that they have
10   to tell you who they're showing it to?

11        **MS. QUIROZ:**  No, Your Honor.

12        **MR. RIZK:**  No.

13        **MS. QUIROZ:**  And specifically, you know, we agree that
14   that would not be appropriate.

15        **MR. RIZK:**  The problem is I can't pre-condition
16   talking to a witness while preparing them or showing them
17   evidence, under agreement to be bound by a court order.  That's
18   a simple problem.  That's the difficulty.  Because a witness --

19        **THE COURT:**  Well, that doesn't bother me, frankly,
20   because I think if I -- if I issue in order that says anybody
21   who has -- has been provided with a copy of this order is bound
22   by it, if I say that, I'm happy.  Because I don't care what you
23   tell them; I believe I've told them that.

24        **MR. RIZK:**  Okay, I don't -- I mean, the Court can do
25   that, but I think that would run pretty clearly contrary to the

 1   law, respectfully.

 2        **THE COURT:**  We do it all the time.

 3        **MR. RIZK:**  This is a different context than a

 4   restraining order.  I mean, it's not -- that's a very different

 5   context, and the case law distinguishes it.

 6        **THE COURT:**  All right.  I'll take a look at this.

 7        But the other thing, Ms. Quiroz, that I'm aware of is

 8   we're not talking about the highly-sensitive -- sensitive

 9   information.  Right?  We're just talking about run-of-the-mill

10   information.

11        **MS. QUIROZ:**  And to that point, Your Honor, going back

12   to what we argued last time and we explained is that the

13   government took a very restrictive approach to what we

14   designated as sensitive, so Mr. Vinnik could have the discovery

15   material in jail.  So that he could be able to have materials

16   on his iPad.  So, you know, we have discussed this with defense

17   counsel numerous times.  We have been very clear about this.

18        So we -- you were careful about our designations.  But, we

19   also wanted to ensure that he could have the discovery material

20   available to him in jail.

21        **MR. RIZK:**  I mean, the government has to play it

22   straight.  If there are documents that it thinks are sensitive

23   and harm would come from disclosure, then it has to designate

24   those.

25        And obviously, by giving them to Mr. Vinnik at the jail,

1   and by not designating, and then saying:  Oh, they actually are

2   sensitive, that's not the way that this process works.

3        **THE COURT:**  That's a little bit of a whack-a-mole, I'm

4   afraid.

5        This matter will be submitted.

6        **MR. RIZK:**  Thank you.  May I submit just the citation

7   to the other case that I mentioned to you, subsequently?

8        **THE COURT:**  Yes.

9        **MR. RIZK:**  Thank you.

10       **THE COURT:**  And I have this one (Indicating).  I'll

11   keep it.

12       Here, I thought the issue was going to be timing.  Because

13   there is a big dispute about timing.

14       Let me ask you this, Mr. Risk.  Mr. Vinnik, you said, has

15   been in custody for six years?

16       **MR. RIZK:**  Yeah.  Because he was arrested in 2017, so

17   he has been in extradition proceedings, and also in an

18   intervening process in France.

19       **THE COURT:**  Right.  So many of those years were the

20   responsibility of France for having prosecuted and convicted

21   him, right?

22       **MR. RIZK:**  Partly.  Although, the United States was

23   also responsible for furnishing evidence to the French

24   government, and I -- I think that they probably suggested to

25   the French government that they should extradite him and have

1  him prosecuted.  But I don't -- I don't know the details of all

2  that.

3          **MS. QUIROZ:**  Your Honor, that's conjecture.  It was a

4  French proceeding; the Court is correct.  A French sentence in

5  a French court.

6          **MR. RIZK:**  With American evidence.  And, and, you

7  know, just the way that the extradition proceedings worked out

8  makes it look as though the United States decided to have him

9  extradited to France.  Because they tried to have him

10  extradited here, and Greece was not -- not so certain about

11  that.

12      Russia filed an extradition request against him to try to

13  get him back to Russia.  And then France filed an extradition

14  request to him, and filed a case against him, using largely

15  evidence provided by the Americans.

16      And so -- and then he went through that process, and he

17  went back to Greece.  And then through some maneuvering, the

18  United States government was successful in extraditing him

19  here.

20      So, my point is that he's been in custody for quite a long

21  time.  And he's now been in custody for a year, here.

22          **THE COURT:**  Popular.

23          **MR. RIZK:**  He's in demand.

24          **THE COURT:**  We had set, last time, a trial date of --

25          **MS. QUIROZ:**  February 5th, Your Honor.

1          **THE COURT:**  February.  So, I have looked at the

2  proposed schedules.  And I'm looking now at one of the

3  attachments to -- maybe this is to the defense papers, but it's

4  got the schedules side by side.

5          **MR. RIZK:**  Right.

6          **THE COURT:**  And I am prepared to do the following.

7      Deadline for superseding indictment, I think there should

8  be one, but it should be August 25th.

9      Government's expert disclosures, I think we need to do

10  basically sooner rather than later.

11     So I'm basically agreeing with the defense on the type of

12  schedule.  We can talk about specific days.  But I would like

13  to get this matter resolved by December 15th, at the pretrial,

14  so that there will be -- so that the rulings will have been

15  made prior to the holiday break.

16     And then we can come back, because it's early in February,

17  what --

18         **MR. RIZK:**  Yeah, it's February 5th.

19         **THE COURT:**  Right.  So I think the basic rulings need

20  to have been provided to you, prior to the holiday break.  So

21  government expert disclosures, September 1st.  I see no problem

22  with that.

23     Substantive Rule 12 motions due September 8th.  That is

24  not going to prejudice the government, because those are

25  basically the defense motions, correct?

```
 1           MR. RIZK:  Yeah.  The government needs to file an

 2    opposition.

 3           THE COURT:  Yeah.

 4           MS. QUIROZ:  Again --

 5           THE COURT:  And then the opposition would be the 22nd.

 6    Reply the 29th.  Then we could set the hearing for

 7    October 19th.

 8           MS. QUIROZ:  The government -- again, Your Honor --

 9    sorry.  The government's -- two of our prosecutors will be in

10    trial, and --

11           THE COURT:  I understand that.  But you'll be here.

12    You're the United States government, you know.  It's a big

13    group.

14       And, it's a big case.  Mr. Rizk is right.  It's a big

15    case.  There's going to be a lot of documents.

16       It's going to be a big lift for you to explain your case

17    to me and to the jury, because it's complicated.  So we need to

18    get going on it.

19           MS. QUIROZ:  Okay.

20           THE COURTROOM DEPUTY:  Your Honor, can you repeat

21    those dates?

22           THE COURT:  Yes.  And Esther, it's -- this is

23    Exhibit A to the defense statement.  And it's the first page of

24    Exhibit A.  But, that has the dates on it.

25       So government's expert disclosure date, September 1.
```

 1          Substantive Rule 12 motions, September 8.

 2          Government oppo, September 22.

 3          Replies, September 29.

 4          The hearing and where -- we're going to specially set it,

 5     Esther, so it's a Thursday -- would be October 19th.

 6          Is that date okay?  That's a Thursday.

 7                  **THE COURTROOM DEPUTY:**  I'll double-check, Your Honor.

 8              **MR. RIZK:**  That's fine with me.

 9          And let me just say, if -- you know, if something needs to

10     be adjusted a few days one way or the other for the

11     government's convenience, the Court's convenience, that's fine

12     with me.

13          But I agree with the Court, overall, that we need to move

14     forward.

15              **MS. QUIROZ:**  I do have -- it has not been finalized,

16     but I will likely be in Washington, D.C. that week, Your Honor.

17     Returning on the 19th.

18              **THE COURT:**  Okay.

19              **MS. QUIROZ:**  So how about the following --

20              **THE COURT:**  How about the following -- the following

21     week?

22              **MS. QUIROZ:**  That would work.

23          **MR. RIZK:**  Sure.

24              **THE COURT:**  All right.  That would be --

25              **THE COURTROOM DEPUTY:**  October 26th, Thursday.

1          **THE COURT:**  All right.  October 26th.  At 11:00.  And

2     definitely, Mr. Vinnik should be there.  So --

3          **MR. RIZK:**  I understand.

4          **THE COURT:**  That should be a live hearing.

5          Rule 16 deadline October 30th, that looks good.

6          And witness/exhibit lists, 404(b) disclosures,

7     October 30th.

8          Defense rebuttal expert disclosures, October 30th.

9          Leaving aside Jencks for one minute, *Brady*, *Giglio*

10    disclosures, November 3rd.

11         Are you --

12         **MS. QUIROZ:**  I would just like to reiterate we'll be

13    sending our papers, Your Honor.  The government recognizes and

14    knows that we have an ongoing obligation to produce *Brady*

15    materials.  You know.  And we do so.

16         **THE COURT:**  Right.

17         **MS. QUIROZ:**  So I don't know that a deadline for that

18    is required or necessary, and we will continue to produce that

19    as --

20         **THE COURT:**  Good.  And as I say, we'll come back to

21    Jencks in a minute.

22         **MS. QUIROZ:**  Sure.  And just one more note,

23    Your Honor, on the witness and exhibit lists which the Court is

24    noting an agreement with defense counsel's proposed date, which

25    we believe is very early.

1          The government reserves the right, as we continue to do,

2     to supplement witness and exhibit lists, and amend them, as

3     necessary, after that date.

4          I just finished a trial in January where we submitted

5     amended exhibit lists, you know, within reason, some time --

6     but up to the beginning of trial, Your Honor.

7          **THE COURT:**  Well, I'm not saying anything.  You've

8     said what you've said, and I'm not saying anything.

9          *Daubert* motions, motions in lim, November 17.

10         Oppositions to them, December 1.

11         Replies to Daubert and motions in lim December 8.

12         Pretrial conference statement, December 8.

13         And I think the government should produce Jencks,

14    December 8th.  And then any remaining disclosures, under the

15    prior ones.

16         And then the pretrial conference would be December 15th.

17         Now, I understand that Jencks doesn't have to be provided

18    until later, according to the case law.  However, in a case

19    like this where there are going to be many witnesses, much

20    documentation -- it's a very complex case -- providing Jencks

21    as late as the trial I think would severely impair the ability

22    of the trial to proceed smoothly, and might occasion the need

23    for either delays in the trial or hiatuses in the trial, which

24    would be very disruptive in a complicated case.

25         So --

1          **MS. QUIROZ:**  Your Honor -- sorry.

2          **THE COURT:**  -- I think it should be by December 8th.

3          **MS. QUIROZ:**  Could we request a carve-out for

4     cooperator Jencks?  Or is it the Court's view that even

5     cooperator Jencks should be produced at that time?

6          **MR. RIZK:**  I mean, we have to prepare.  And I'm happy

7     to agree, you know, to talk to the government about the

8     sensitivities of the cooperators' identities, and agree to

9     reasonable restrictions to protect those, but I'm obviously

10    nervous about losing a trial date.

11         **THE COURT:**  Why don't we do this.  If there are

12    cooperators -- I think you definitely should talk to each

13    other.  Because if you can work it out, that would be great.

14         **MR. RIZK:**  Uh-huh.

15         **THE COURT:**  If you can't, provide your Jencks.  And

16    then if there's cooperator Jencks, you can file it under seal,

17    and let me look at it and see how much there is and how we

18    would deal with it.

19      Oh.  And then I had -- yeah, December 15th is the

20    pretrial.  Esther notes that that's a Friday when we have other

21    stuff, so maybe December -- are we available December 14th,

22    Esther?

23         **THE COURTROOM DEPUTY:**  Yes, Your Honor.

24         **THE COURT:**  Is December 14th okay with you folks?

25         **MR. RIZK:**  Yes.

1        **THE COURTROOM DEPUTY:**  At what time?

2        **THE COURT:**  I'm sorry?

3        **THE COURTROOM DEPUTY:**  At 3:30?

4        **THE COURT:**  No, it should be in the morning, I think.

5    How about 11:00?

6        **THE COURTROOM DEPUTY:**  The 14th, right, sorry.

7        **THE COURT:**  14th.

8        **MR. RIZK:**  14th.  And does the Court anticipate

9    beginning jury selection on February 5th or -- you know,

10   increasingly, colleagues seem to like to do it a little bit

11   earlier, like a week earlier for a long trial, but I don't feel

12   particularly strongly about it.

13       I do think that that is somewhat convenient, probably

14   from, at least, my perspective.  But --

15       **THE COURT:**  Well, and the truth has been -- I don't

16   know if it will continue to be by February -- the truth has

17   been that we are dictated to a little bit by our Jury Office,

18   when we can do that.  And much of that has come from the

19   availability of the jury.

20       **MR. RIZK:**  Okay.  Maybe we can just -- to be

21   determined on that, in consultation?

22       **THE COURT:**  I think that's a good idea, because I

23   actually do like doing it in advance.  And then we can start

24   right up on the Monday.

25       And we can talk more later about questionnaires and

```
 1   things.  We do have a standard questionnaire that's sent out,
 2   but we can tailor it, if we provide enough advance notice.  So
 3   be thinking about that, because we might want to do that.
 4           MR. RIZK:  Yeah, yeah.
 5           MS. QUIROZ:  We might prefer to be -- the new year
 6   might be, as the Court noted availability, it might be
 7   difficult to come -- people might not be here.  So, just --
 8           THE COURT:  But before.
 9           MR. RIZK:  We can do it earlier.
10           THE COURT:  I -- it wouldn't be -- it would be after,
11   after the new year.
12           MS. QUIROZ:  Oh, okay.
13           THE COURT:  Normally, we do the week prior.  You know,
14   it would be like the Wednesday or Thursday prior to the
15   February 5th start.
16           MS. QUIROZ:  So not the 29th.  Sorry, I misunderstood.
17           THE COURT:  Yeah.
18           MS. QUIROZ:  Okay.
19           THE COURT:  But again, it hasn't lately been totally
20   within our control.
21           MR. RIZK:  Yeah.
22           THE COURT:  It's been partially based on what the Jury
23   Office can provide.
24           MR. RIZK:  Why don't government counsel and I approach
25   the Jury Office about that issue, and find it out.
```

1          **THE COURT:**  Yeah.  And you can also help them figure

2     out how many we're going to need.  We'll decide at the time

3     about peremptories and all of that.  But if you feel like we're

4     going to need a really large panel, advance notice to them

5     would be helpful.

6          **MR. RIZK:**  We can discuss it.

7          **THE COURT:**  Yeah.  I don't think there's going to be a

8     matter of conflict so much as just availability.

9        How long do you expect the trial will take?

10          **MS. QUIROZ:**  I would say -- four weeks?

11          **MR. RIZK:**  That was the government's estimate.

12          **THE COURT:**  And that is a long, long trial, for Jury's

13     purposes.

14        Okay.

15          **MR. RIZK:**  Is that -- Ms. Quiroz, is that four weeks,

16     four days a week?  Or -- I think the Court sometimes --

17          **THE COURT:**  Because, we do four days a week.

18     Generally 9:00 to 3:30, so you get five solid hours of

19     testimony a day.

20          **MS. QUIROZ:**  I think we anticipated that, taking into

21     consideration the Court's schedule.

22          **MR. RIZK:**  I think that's right.

23          **THE COURT:**  And I don't know if there are holidays in

24     February or not.

25          **MS. QUIROZ:**  I don't -- let's see.

1          **THE COURTROOM DEPUTY:**  February 19th is a holiday.

2          **THE COURT:**  Okay, so there's one.

3          **MR. RIZK:**  At the two-week mark.

4          **THE COURT:**  All right.  And I have cleared out my

5     calendar for you so, it's all there.

6          **MS. QUIROZ:**  Thank you.

7          **MR. RIZK:**  Thank Your Honor.

8       The last matter is the defense agrees to stipulate to

9     waive time through the jury trial date.

10          **MS. QUIROZ:**  Sorry, before we --

11          **MR. RIZK:**  Do that?

12          **MS. QUIROZ:**  Did we cover all the deadlines?

13          **MR. RIZK:**  Yeah, I think we did.

14          **THE COURT:**  I thought so.

15          **MS. QUIROZ:**  Did I miss the foreign translations?

16          **THE COURT:**  Oh, translations.  We need to talk about

17    that.

18          **MR. RIZK:**  Thank you.

19          **THE COURT:**  Thank you.

20       Um, I -- I agree with the government on this one.  They

21    probably need some time for that.  So what's the problem with

22    November 15 for that?

23          **MR. RIZK:**  Well, it depends on the volume of the

24    translations.  And I'm just concerned, like, there's already a

25    lot of foreign-language documents in this case.  And, you know,

1    Russian interpreters are a little bit harder to find around

2    here, compared to, for example, Spanish interpreters.  And it's

3    just expensive.  And if you do -- if you -- you know, the

4    faster you need them, the more expensive they are.

5        So if I get, like, a big dump of translations -- which I

6    think is pretty likely -- on November 15th, then there's

7    Thanksgiving, and then there's the rest of the holidays.  And I

8    just need them as quickly as possible.  So that's -- that's why

9    I'd asked for an earlier date.

10       I mean, I guess -- would, like -- November 1st, as a

11   compromise, perhaps?

12           **THE COURT:**  How would that be?

13           **MS. QUIROZ:**  Obviously I would prefer November 15th,

14   Your Honor, but --

15           **THE COURT:**  Okay.  Let's do November 1st, then.

16           **MS. QUIROZ:**  Also just to note, Your Honor, again,

17   that with respect to cooperator Jencks, you know, the

18   government may want to withhold cooperator Jencks translation,

19   given sensitivities of cooperator identities.  So --

20           **THE COURT:**  Although you'll have the translations by

21   then, right?

22           **MS. QUIROZ:**  But in terms of providing those materials

23   to --

24           **THE COURT:**  No, I understand that.

25           **MS. QUIROZ:**  Yeah.

1          **THE COURT:**  But -- I just want to make sure that on

2     December 8th, when you've produced that, if there are withheld

3     cooperator materials, they will be translated.

4          **MS. QUIROZ:**  Oh, yes.  Yes, of course.  Yeah.

5          **MR. RIZK:**  So is the Court anticipating that if the

6     parties can agree to some restrictions -- I anticipate the

7     government's position, as it is now, is just that they don't

8     want to turn over cooperator Jencks until they have to.  Until

9     the last possible date.

10         So, and then Your Honor said:  If that's your position,

11    you have to file it under seal.

12         **THE COURT:**  Right.

13         **MR. RIZK:**  So when are they expected to file it under

14    seal?  December 8th?  Or earlier?

15         **THE COURT:**  December 8th.

16         **MR. RIZK:**  What is the volume of cooperator Jencks?

17         **THE COURT:**  Well, I don't know.  That's my point.  If

18    they're withholding some, I'd like to know what the volume is,

19    and scope of it.

20         **MR. RIZK:**  Right.

21         **THE COURT:**  And it gives me a little bit of time to

22    work with you to figure out when.

23         **MR. RIZK:**  Okay.  I'll look at that.

24         **THE COURT:**  And is it agreeable to the government to

25    exclude time between now and February 5th?

1    **MS. QUIROZ:**  Yes, Your Honor.  We have a trial date.

2    Under 18 U.S.C. 3161(h)(1)(B), there is excludable time.

3    We have not submitted a stipulation/proposed order between

4    the last appearance and today, mainly because defense counsel

5    had not agreed to it, which I don't know that he really --

6    **THE COURT:**  Oh, you mean protective order?  Is that

7    what you're talking about?

8    **MS. QUIROZ:**  I know he wanted to raise that as well.

9    **MR. RIZK:**  No, no.  At the last hearing, Mr. Vinnik

10   was not here.  And so when the Court asked about waiving time

11   to this date, I said I should discuss it with him.

12   So I'm happy to waive the speedy trial clock from the last

13   appearance on June 9th to today's date, as well as through the

14   trial date.

15   **THE COURT:**  All right.  I do find that all that is

16   appropriate.  And why don't we get one written order that will

17   take it from then to trial.

18   **MS. QUIROZ:**  Okay.

19   **MR. RIZK:**  Sounds good.

20   **MS. QUIROZ:**  Thank you, Your Honor.

21   **THE COURT:**  All right.  And I will get back to you

22   soon on the protective order.

23   **MR. RIZK:**  Thank you.

24   **THE COURT:**  All right.

25   **MR. RIZK:**  I don't think we need another date at this

 1   point.

 2        **THE COURT:**  Oh, and Ms. Quiroz, what would you like to

 3   do about Mr. Vinnik's absence from here today?  Do you think we

 4   need to have a remedial hearing for that?

 5        Or, if I get a declaration from Mr. Rizk that he shared

 6   with Mr. Vinnik all the stuff going on, or a statement from

 7   Mr. Vinnik that he heard everything that went on?

 8        **MS. QUIROZ:**  I mean, I would hope that no issues arise

 9   from his absence today.  So, yes.  If he could provide a

10   declaration to that effect, that would be acceptable to the

11   government.

12        **MR. RIZK:**  That's fine.

13        **THE COURT:**  All right.  Thank you.

14        **MS. QUIROZ:**  Thank Your Honor.

15        **MR. RIZK:**  Thank you.

16        **THE COURTROOM DEPUTY:**  That concludes our criminal

17   hearings for today.

18        (Proceedings concluded)

19

20

21

22

23

24

25

CERTIFICATE OF TRANSCRIBER

  I, BELLE BALL, CSR 8785, CRR, RDR, hereby certify that the foregoing is a correct transcript, transcribed to the best of my ability from the official electronic sound recording of the proceedings taken on the date and time previously stated in the above matter.

  I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.


_____
/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Monday, August 14, 2023